UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

v.

                                        Case No. 21-CR-98

DAVID DEXTER,

            Defendant.

## SENTENCING MEMORANDUM and PSR OBJECTION

David Dexter, by counsel, hereby submits this sentencing memorandum. Dexter requests that the Court impose the mandatory minimum 60-month term of imprisonment followed by a term of supervised release. Counsel for Dexter also objects to one of the proposed conditions of supervision. As grounds, counsel submits the following.

**I.**     **PSR Objection**

Dexter objects to proposed condition of supervision #6, found on page 21 of the PSR. Docket No. 9. The proposed condition reads that "[t]he

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

1

defendant shall not knowingly go to places or enter buildings where controlled substances are unlawfully sold, used, distributed, or administered."

Title 18 U.S.C. § 3583(d)(1) requires that conditions of supervised release be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, as well as be related to deterrence, protection of the public, and provision of treatment. Section 3583(d)(2) requires that conditions of supervised release involve no greater deprivation of liberty than is reasonably necessary to achieve deterrence, protection of the public, and provision of treatment. Recent Seventh Circuit opinions have made it clear that general conditions, standard conditions, or one-size-fits-all conditions do not pass muster. *See generally United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014); *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015).

This is obviously not a drug case, so a condition preventing Dexter from frequenting locations involving drugs is not reasonably related to the nature of the offense. Dexter does not have a drug problem, so the same condition is also not reasonably related to the characteristics of the defendant. It is hard to see how this proposed condition is anything more than redundant to the very first mandatory condition, which is don't break the law. To the extent that the Probation Office considers this a "standard" condition that is used in all cases, the

Seventh Circuit in *Thompson* stated "It is not correct, however, as has been suggested, that standard conditions are 'basic administrative requirements essential to the functioning of the supervised release system.'" *Thompson* at 378 (citations omitted). This would be a substantive condition, not an administrative one, and the one-size-fits-all approach of "standard" conditions is no longer appropriate.

Informally, the Probation Office suggested that this condition would not be onerous for Dexter to follow. Whether that is true or not is subject to debate; but whether the condition is onerous is not the correct legal standard. The condition must be reasonably related either to the defendant or to the offense, and this condition is reasonably related to neither. Should the condition become relevant in the future, the Court has the ability to add it.

## II. Nature and Circumstances of the Offense

In January 2020, federal and state law enforcement began a joint investigation into on-line child pornography.[1] The operation focused on the messaging platform known as "Kik," giving the investigation its name of Operation Kickboxer. As relevant to this case, on March 3, 2020, Dexter sent at least one image to a Kik chat group involving child pornography. PSR ¶13. A

---

[1] If these facts seem familiar, it is because this is one of several cases charged in this district resulting from the same law-enforcement investigation.

Winnebago County Sheriff's Department officer was a covert member of that group, so Dexter's distribution of the image was recorded and captured by the investigation.

Law enforcement followed up with administrative subpoenas served on Kik and other internet service providers. The subpoenaed information led to Dexter, and on September 9, 2020, FBI agents executed a search warrant at Dexter's residence in Nashville, Tennessee. Dexter gave a statement to the FBI in which he admitted to sharing the charged image and accessing child pornography via the Kik platform. A subsequent forensic search of Dexter's computer media found 72 files containing child pornography, consisting of 45 videos and 27 images. PSR ¶17.

Dexter was indicted on May 18, 2021, about 15 months after the charged event and about eight months after the search. Docket No. 1. He was arrested on July 8, 2021,[2] and appeared in court in the Eastern District of Tennessee. Docket No. 2. Dexter was released on conditions including electronic monitoring, and he has complied with his conditions as ordered. PSR ¶¶2, 5. Dexter appeared for the arraignment in this district via videoconference on July 21, 2021. Docket No. 4. Dexter then entered a guilty plea to Count One of the indictment

---

2 Dexter was first arrested and charged with the same facts in Wilson County, Tennessee, on or about December 15, 2020. He spent approximately two months in custody before posting bond. That matter is still pending, and it is currently unknown whether Wilson County will continue their prosecution.

pursuant to a written plea agreement on September 15, 2021. Docket Nos. 7, 8. Sentencing is scheduled for December 20, 2021, by videoconference. Counsel for Dexter will make a record of the defendant's consent to sentencing by videoconference at the hearing.

### III. History and Characteristics of the Defendant

Dexter is 44 years old. He was born in Tennessee and lived with his parents there, as well as in Virginia and Kentucky. His parents separated when he was 11, and Dexter then lived with his mother in Tennessee. The PSR reflects a mostly positive childhood. PSR ¶¶48-50. Dexter's father was in the Navy and his mother was a nursing home administrator. Dexter's father moved away after the separation, and Dexter's relationship with him became distant for a while. They have reconnected as they both got older, and now have a close and supportive relationship. Dexter moved back in with his mother at the beginning of this case, and she is obviously supportive as well. Dexter is divorced and has no children.

As might be expected, Dexter has significant anxiety and depression as a result of the prosecution. He also has a history of anxiety, including a suicide attempt in 2001. PSR ¶62. Dexter was referred for a mental health evaluation as a condition of release (PSR ¶63), and records from that examination reflect diagnoses of major depressive disorder (single episode) and anxiety disorder, both persistent

and worsening. PSR ¶64. Dexter was prescribed a variety of medications to take on an as-needed basis which he finds helpful in managing his on-going symptoms. PSR ¶¶64, 65.

Alcohol and drugs are not currently an issue for Dexter. Though he has an OWI in his past, it was 17 years ago, and his current use of alcohol appears to be minimal. Dexter tried marijuana and cocaine only a few times in his life, and any use of either was over 25 years ago. PSR ¶¶69, 70.

Dexter's criminal record is also minimal. Again, he has an OWI from 2004 where he served two (2) days in jail and paid a fine. PSR ¶37. Dexter's other conviction is for disorderly conduct and speeding in 2006, for which he paid a fine. PSR ¶38. Neither conviction is relevant to the case at hand and neither scores any points under the Guidelines, so Dexter is in criminal history category I.

Dexter appears to have been an indifferent student in high school (PSR ¶¶50, 71), but went back to school later in life and did very well. He attended Northeast State Community College and received an associate degree in electrical technology in 2015. PSR ¶72. He then attended East Tennessee State for two years and received a bachelor of applied science degree in 2018. PSR ¶73. Dexter hopes to continue his education later in life, with an eye toward a master's degree in either electrical engineering or business administration. PSR ¶75.

From 2013 to 2019, Dexter worked several jobs as a maintenance technician, performing repairs and troubleshooting automated equipment. PSR ¶¶80-83. Dexter used his education to find a better job that he enjoyed and that was challenging for him. Dexter found work from 2019 to 2020 as an automation engineer at a factory in Tennessee that made parts and electrical components for the auto industry. PSR ¶79. Dexter liked this job, and it paid well. Unfortunately, he lost his employment upon his arrest in this case. Since then Dexter has been unemployed. Though he has tried to find work, implementation of his conditions of release have severely limited his ability to seek employment, as most employers have on-line applications that he is not allowed to access.

## IV. Sentencing Options

18 U.S.C. § 3553(a)(3) directs the Court to consider the kinds of sentences available in making the sentencing decision. The sentences available in this case are as follows:

- A. A statutory sentencing range of 5 - 20 years imprisonment pursuant to 18 U.S.C. § 2252A(a)(2)(A).

- B. As calculated by the PSR, an advisory sentencing guideline range of 97 to 121 months (approximately 8 to 10 years), based on a total offense level of 30 and a criminal history category of I. PSR ¶89.

- C. A non-guideline sentence.

As noted in the plea agreement, the parties are both recommending that the Court impose the mandatory minimum sentence of 60 months. Docket No. 7, ¶20.

## V. Applicable Law

The district court has broad discretion to impose a non-guideline sentence; appellate review looks only for abuse of that discretion. *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014); *see also United States v. Wachowiak*, 496 F.3d 744, 748 (7th Cir. 2007)(a sentencing judge has considerable discretion to individualize the sentence to the offense and offender as long as the judge's reasoning is consistent with § 3553(a)); *United States v. King*, 861 F.3d 692 (7th Cir. 2017)(district court is to calculate the correct offense level and criminal history category under the guidelines, then step back and use independent judgment under § 3553(a) to impose a sentence tailored to the individual offender and his or her crimes).

A court is free to disagree with a guideline on policy grounds (*Kimbrough v. United States*, 522 U.S. 75 (2007)), and a court must make an individualized assessment based on the facts of a case to arrive at a sentence that is sufficient but not greater than necessary. *Gall v. United States*, 522 U.S. 38 (2007). The Court should find that the PSR's advisory guideline range of 97 - 121 months

does not produce a reasonable sentence, and that the parties' recommendation of 60 months is sufficient and not greater than necessary.

## VI. Argument

The guideline range of 97 - 121 months over-represents what would be a fair and just sentence, so counsel for Dexter turns to the mandatory minimum as a better measure of the seriousness of the offense. The five-year mandatory minimum is the closest available indicator of a sentence that reflects the nature of the offense and the history and characteristics of the defendant. Congress set the mandatory minimum at five years, so that sentence meets the statutory goals of addressing the seriousness of the offense and promoting respect for the law.

Dexter has no scoring criminal history convictions, and what he does have is old and irrelevant to the current charge. His longest term in in custody before this case was two days, so the sentence imposed here will be his first of any real length. The five-year mandatory minimum means that Dexter starts out with a significant sentence. Five years is not short, and a sentence of any length would deter Dexter. Since the sentence cannot be less than five years, it will make even more of an impression upon Dexter because he hasn't been imprisoned before.

Five years provides a strong deterrent value to Dexter from the sentence's shock value alone. Further deterrence comes from practicality, since the

facts of this case are not likely to come up again. Like many similar defendants, Dexter didn't know the mandatory minimum penalties involved in federal child pornography prosecutions. He knows them now, and knows how the penalties increase for repeat offenders. The knowledge he takes from this prosecution and sentencing will deter him in the future.

Dexter does not present a danger to the public. He does not have a violent history, nor do the facts of the case suggest that Dexter engaged in any contact offenses. This was an internet crime, not a physical one. Society has been protected from Dexter since his arrest and it will continue to be protected by the sentence the Court imposes, whatever its length. Further protection will come from the term of supervision that will follow incarceration. Five years in prison provides society enough protection from a non-violent defendant like Dexter, especially one with his family support.

Dexter does not have any AODA treatment needs. He could benefit from mental health programming to address his depression and anxiety. That type of treatment could go hand in hand with sex offender treatment that is suggested as a condition of supervision. A longer sentence doesn't mean more treatment; rather, Dexter's treatment needs can be met in the community while on supervision.

As noted in the beginning of this memo, this case is similar to several others arising from the same investigation that have been recently prosecuted in this district. Dexter and the other defendants match up in most relevant aspects. They are in their late 30's or early 40's, have no criminal records, were employed (and lost their jobs) at the time of their arrests, have comparatively small numbers of images and videos, have minimal treatment needs beyond the offense of conviction, and are not contact offenders. Another similarity is that these defendants all have high guideline ranges that do not fit the nature of the crime or the characteristics of the offender. None of them (including Dexter) are dangerous, yet the guidelines treat them as though they were. For all these reasons, the Court should give the guideline range no deference. The Court must, of course, follow the law. The five-year mandatory minimum sentence is sufficient but not greater than necessary to meet the statutory goals of sentencing Dexter.

## V. Conclusion

Based on the grounds listed above and upon those to be argued orally at the sentencing hearing, counsel for Dexter respectfully requests that the Court impose the mandatory minimum 60-month sentence to be followed by a term of supervised release. Counsel requests that the Court decline to impose a fine or any additional assessments as Dexter does not have the financial ability to pay.

Restitution is not applicable. Counsel asks that the judgment include a recommendation for BOP placement at FCI Sandstone.

Dated at Green Bay, Wisconsin, December 15, 2021.

Respectfully submitted,

**s/ Tom Phillip**
Tom Phillip, Bar #1023113
Attorney for David J. Dexter
Federal Defender Services of Wisconsin, Inc.
801 E. Walnut Street, Second Floor
Green Bay, Wisconsin 54301
Tel:   920-430-9900
Fax:   920-430-9901
tom_phillip@fd.org

N:\Cases-Open\C-D\Dexter, David J - 21-116\Sentencing\DEXTER sent memo FINAL.docx